IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GLENDA M. BROWN,           §
                          §
                Plaintiff, §
                          § Civil Action No. 3:08-CV-0540-D
VS.                       §
                          §
MICHAEL J. ASTRUE, COMMISSIONER §
OF THE SOCIAL SECURITY    §
ADMINISTRATION,           §
                          §
                Defendant. §

<u>MEMORANDUM OPINION</u>

In this action seeking judicial review of the denial of social security disability benefits, the court must decide whether——following an agreed remand under the fourth sentence of 42 U.S.C. § 405(g)——the Commissioner of Social Security ("Commissioner") was prohibited by the law-of-the-case doctrine or the mandate rule from reexamining any issues other than the ones identified in the remand order. Concluding that he was not, the court affirms the Commissioner's decision denying disability benefits.

I

Plaintiff Glenda M. Brown ("Brown") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the Commissioner's final decision denying her application for a period of disability and disability insurance benefits under Title II of the Act. Brown is before this court a second time. She applied for disability insurance in 2002,

alleging that she had become disabled on November 1, 1994 due to a C-5 ruptured disc, nerve damage in her neck, shoulders, and back, and stress. The Commissioner denied Brown's application, and, following a hearing, Administrative Law Judge ("ALJ") Robert M. Senander ("Judge Senander") concluded that Brown was not disabled. Judge Senander found at step two of the five-step sequential process that Brown had "severe C5-6 radiculopathy . . . and an adjustment disorder with depressed mood." He found at step three that Brown's impairments were not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Based on his finding that Brown retained the residual functional capacity ("RFC") for restricted sedentary work activity,[1] Judge Senander found at step four that Brown was incapable of performing her past relevant work as a warehouse worker and home health aide. At step five, based on evidence and testimony from a vocational expert ("VE"), Judge Senander found that Brown could perform other work that existed in significant numbers in the economy and that she was not disabled under the Act.

After Brown unsuccessfully sought review by the Appeals Council, she filed suit in this court seeking judicial review under 42 U.S.C. § 405(g). *See Brown v. Barnhart*, No. 3:04-CV-2418-B

---

[1]Judge Senander found that Brown's RFC for the full range of sedentary work, as defined in the regulations, was reduced by her inability to reach overhead or climb ladders and her inability to kneel, crouch, balance, and climb stairs on more than an occasional basis, as well as the requirement of a sit/stand option.

(N.D. Tex. filed Nov. 9, 2004) (Boyle, J.).  The Commissioner moved to remand for further administrative proceedings, and Judge Boyle remanded the case by an agreed order that provided, in pertinent part:

> Before the Court is defendant's motion for remand; and it appearing that said motion is unopposed, it is granted.  Accordingly, it is ORDERED that the above numbered and entitled cause be, and the same is hereby remanded to said Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  Upon the receipt of the remand order the Appeals Council will assign to Administrative Law Judge (ALJ) to evaluate the mental residual functional capacity of the claimant.  The proceedings on remand will include a supplemental administrative hearing before an ALJ.  A vocational expert will be present at the hearing and the ALJ will pose a hypothetical question to the vocational expert that will include any non-exertional (mental) limitations as articulated in the ALJ's assessment of claimant's mental residual functional capacity.

R. 478 (bold font omitted).

Following remand, the Appeals Council vacated the prior decision and remanded the case for further proceedings consistent with the court's remand order.  The order specifically directed the assigned ALJ to evaluate Brown's mental RFC and to pose a hypothetical question to the VE that included any nonexertional (mental) limitations, as articulated in the ALJ's assessment of Brown's mental RFC.

This time, ALJ Christopher L. Williams ("Judge Williams"), not

Judge Senander, conducted the hearing. Judge Williams concluded that Brown was not disabled. Not confining himself to the step four issue of Brown's mental RFC, Judge Williams determined at steps two and three that Brown's cervical herniated nucleus pulposus was a severe impairment, that her mental impairment was non-severe, and that neither her physical nor mental impairments, alone or in combination, met or equaled the requirements of any listed impairment. He determined Brown's RFC according to three time periods: from November 1, 1994 through August 31, 1998, Brown retained the RFC to perform work at the light level; from September 1, 1998 through March 1, 1999, she was unable to perform any work; and from March 2, 1999 through March 31, 2000, she could perform sedentary work. Based on these findings, Judge Williams found, at step four, that Brown could not perform her past relevant work. At step five, however, he found that Brown retained the ability to perform other work existing in significant numbers in the national economy and, consequently, was not disabled under the Act. Brown appealed Judge Williams' decision to the Appeals Council, which declined to assume jurisdiction, and the decision became final.

Brown now seeks judicial review of the Commissioner's second denial of her claim, presenting this single issue: whether Judge Williams violated the law-of-the-case doctrine and/or the mandate rule by rendering new findings——distinct from those made by Judge Senander——on issues not specifically included in this court's

remand order entered in her first suit.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the

claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2008). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

## III

Although Brown identifies three component issues presented, each is subsumed under the rubric of this single contention: Judge Williams violated the law-of-the-case doctrine and/or the mandate rule[2] by rendering new findings at steps two and four on issues that were not before him under the court's remand order. The merit

---

[2]Brown frames her argument in terms of the law-of-the-case doctrine and merely adverts to the mandate rule. Although the court could conclude that she has failed to adequately brief the mandate rule, the court will address this issue given its centrality to the court's reasoning in rejecting Brown's law-of-the-case and policy arguments.

of Brown's present suit for judicial review therefore pivots on the validity of this argument.

The law-of-the-case doctrine prohibits a court on remand from reexamining an issue of law or fact decided on appeal. *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998). "This self-imposed doctrine serves the practical goals of encouraging finality of litigation and discouraging panel shopping." *Id.* (internal quotations omitted); *see* 18B Charles Alan Wright, et al., *Federal Practice and Procedure* § 4478, at 637-38 (2d ed. 2002) ("Law-of-the-case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit."). The mandate rule, a corollary of the law-of-the-case doctrine, provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate, and may not disregard the explicit directives of that court. *Becerra*, 155 F.3d at 753. "The mandate rule simply embodies the proposition that a district court is not free to deviate from the appellate court's mandate." *Id.*

Although this court has located no case in which the Fifth Circuit has specifically applied the law-of-the-case doctrine or the mandate rule to a disability claim, other circuits have recognized that both principles extend to the Commissioner of

Social Security.[3]  *See, e.g., Grigsby v. Barnhart,* 294 F.3d 1215, 1218 (10th Cir. 2002) ("Although primarily applicable between courts of different levels, the [law-of-the-case] doctrine and the mandate rule apply to judicial review of administrative decisions[.]") (appeal from district court decision affirming Commissioner's denial of disability benefits); *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir. 1998) (holding that, under law-of-the-case doctrine, ALJ was not free to ignore appellate court's determination regarding sufficiency of the evidence); *Brachtel v. Apfel*, 132 F.3d 417, 420 (8th Cir. 1997) (holding that if the district court actually found that claimant needed to lie down, the ALJ on remand would be bound by that finding under the-law-of-the-case doctrine).  The Commissioner does not contest the premise that the law-of-the-case doctrine and the mandate rule restrict his decisionmaking authority.  Instead, he maintains that his decision on remand abridged neither the doctrine nor the rule.

## IV

The court first considers whether the Commissioner's decision must be reversed for violating the law of the case.

## A

Whether, as Brown contends, the law-of-the-case doctrine

---

[3]"In Social Security proceedings, the district court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court of appeals' position with respect to a trial court." *Ischay v. Barnhart*, 383 F.Supp.2d 1199, 1215 (C.D. Cal. 2005).

precluded Judge Williams from revisiting on remand Brown's physical RFC and the severity of her adjustment disorder with depressed mood turns on whether this court actually decided these issues in her first suit. *See Becerra*, 155 F.3d at 752; 18B Wright, et al., *supra*, § 4478, at 649 ("Actual decision of an issue is required to establish the law of the case. Law of the case does not reach a matter that was not decided."). The doctrine applies both to issues decided explicitly by the district court and to issues decided by necessary implication. *See Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir. 1974).

The Commissioner argues that because this court ordered the remand before it reached the merits of any administrative findings, and did so only at the Commissioner's request, this court did not make any rulings on any issues contained in Judge Senander's final administrative decision, and it specifically did not find that substantial evidence supported Judge Senander's step one through three findings or RFC determination. Thus, according to the Commissioner, there was no law of the case that bound Judge Williams on remand.

Brown contends that, in her first lawsuit, this court sustained Judge Senander's step one through step three findings and physical RFC determination because, even though the court entered an agreed order, it necessarily made a decision on the merits by remanding Brown's claim pursuant to sentence four of 42 U.S.C.

§ 405(g). And she posits that, in the agreed order directing the ALJ to address specific issues at step four and five, this court sustained by necessary implication Judge Senander's determination at step two of the severity of Brown's mental impairment and his assessment at step four of her physical RFC.

B

Quoting isolated language from case law that explains the difference between sentence-four and sentence-six remands, Brown reasons that because the court expressly remanded Brown's first suit under sentence four of 42 U.S.C. § 405(g), and because a "substantive ruling on the correctness of [the Commissioner]'s decision" is a necessary prerequisite to a sentence-four remand, the court necessarily made a decision on the merits of Judge Senander's step one through three findings and physical RFC determination. P. Br. 6. The court disagrees. Accepting the fact that the remand order was a substantive ruling, it does not follow that the court made a decision on the merits of Judge Senander's specific findings. In the context of a sentence-four remand, a "substantive ruling on the correctness of [the Commissioner]'s decision" simply means a decision affirming, modifying, or reversing the decision of the Commissioner.

> Section 405(g), which governs judicial review of final SSA decisions authorizes only two types of remands: those pursuant to sentence four and those pursuant to sentence six. Under sentence four, a district court may remand for further proceedings in conjunction

- 10 -

with "a judgment affirming, modifying, or
reversing the decision of the Commissioner."
42 U.S.C. § 405(g). A sentence-six remand is
entirely different. The district court does
not affirm, modify, or reverse the
[Commissioner's] decision; it does not rule in
any way as to the correctness of the
administrative determination. Rather, the
district court remands either because (1) the
Commissioner requested a remand before filing
his answer, or (2) there is new evidence which
is material and there is good cause for the
failure to incorporate such evidence into the
record in a prior proceeding.

*Krishnan v. Barnhart*, 328 F.3d 685, 691 (D.C. Cir. 2003) (some

internal quotations and citations omitted) (holding that district

court made no substantive ruling where it did not affirm, modify,

or reverse Commissioner's decision but maintained jurisdiction over

the action); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)

(stating that district court made no substantive ruling where it

did not affirm, modify, or reverse the Secretary's decision, but

merely returned the case to the agency for disposition).

Brown's argument conflates two separate issues. Whether a

district court remands pursuant to sentence four or sentence six is

a separate question from whether in doing so it decides certain

issues so as to establish the law of the case. A court can modify

or reverse the Commissioner's decision without establishing the law

of the case on a particular issue. *See Brachtel*, 132 F.3d at 420

(holding law-of-the-case doctrine inapplicable where district court

remanded pursuant to sentence four but did not actually decide

specific issue of whether claimant needed to lie down); *Hollins v.*

*Massanari*, 49 Fed. Appx. 533, 535 (6th Cir. 2002) (holding law-of-the-case doctrine inapplicable in sentence-four remand where district court made no final decision on the merits regarding claimant's physical impairments and RFC but merely assumed the merit of ALJ's determination regarding those issues for purpose of evaluating claimant's claims regarding two narrow errors committed by ALJ). Indeed, a court can dispose of a case under sentence four without reaching the merits of (or establishing the law of the case on) any disability-analysis issue. *See Goodwin v. Astrue*, 549 F.Supp.2d 1125, 1130 (D. Neb. 2008) (reversing and remanding under sentence four where evidence was inadvertently omitted from file submitted to and considered by Appeals Council); *see also Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) (noting that petitions for mandamus are frequently denied as a result of special limitations inherent in the writ itself, and not on the merits, and that such denials are not given law-of-the-case effect).

Although Judge Boyle granted the Commissioner's motion to reverse[4] and remand pursuant to sentence four, there is no explicit

_____

[4]Judge Boyle's order did not expressly *reverse* Judge Senander's findings. *See* R. 478 ("Accordingly, it is ORDERED that the above numbered and entitled cause be, and the same is hereby remanded to said Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g)."). Although an explicit reversal would be preferable under sentence four, it is fair to construe the order as a reversal because it granted the Commissioner's unopposed motion, which specifically requested a reversal under sentence four. *See id.* at 480 ("Defendant . . . Commissioner of Social Security . . . respectfully moves this Honorable Court to *reverse* and remand the

indication that she made any substantive determinations regarding the merits of Judge Senander's findings. In fact, Judge Boyle stated in her order that she was granting the Commissioner's motion——*not* because she had reviewed the record and found Judge Senander's findings to be in any respect erroneous or reversible——but simply because the motion to remand *was unopposed*. R. 478 ("Before the Court is defendant's motion for remand; and it appearing that said motion is unopposed, it is granted."). Therefore, the fact that she remanded Brown's first suit under sentence four does not of itself establish that the law-of-the-case doctrine applied to foreclose on remand the reconsideration of Brown's physical RFC and the severity of her adjustment disorder. Whether the order qualified as a substantive ruling, and whether it explicitly or implicitly reached the merits, are separate questions.

C

Brown relies on another decision of this court, *Goundie v. Barnhart*, No. 7:03-CV-0176-R (N.D. Tex. Sept. 20) (Kaplan, J.), *recommendation adopted*, (N.D. Tex. Sept. 23, 2004) (Buchmeyer, J.) (order), to argue that, in directing the ALJ to address specified issues at step four and five, the agreed order sustained by necessary implication Judge Senander's determination at step two of

---

above-captioned case to Barnhart, pursuant to the fourth sentence of 42 U.S.C. § 405(g), for further proceedings." (emphasis added)).

- 13 -

the severity of Brown's mental impairment and at step four of her physical RFC. The procedural background of *Goundie* is substantially similar to that of the present case. After the Commissioner denied the plaintiff's application for supplemental security income benefits, the plaintiff sought judicial review in this court on the single ground that the Commissioner had improperly determined that he had the RFC to perform other work existing in significant numbers in the national economy (step five). The plaintiff did not contest any of the ALJ's other findings (i.e., those pertinent to steps one through four). The Commissioner filed a motion to remand,[5] and, based on the parties' agreement, this court remanded the case. The remand order in *Goundie* provided, in pertinent part:

> [T]his case [is] remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of the Social Security Act, 42 U.S.C. § 405(g). Specifically, the Commissioner will further address the applicability of the Medical Vocational Guidelines to Plaintiff's residual functional capacity, education, and skill level, in determining whether or not Plaintiff was disabled upon turning 45.

*Goundie*, No. 7:03-CV-0176-R, slip op. at [6] (emphasis omitted).

On remand, however, a different ALJ conducted a *de novo*

---

[5]The Commissioner filed the motion to remand "in order to further address the applicability of the Medical-Vocational Guidelines to Plaintiff's residual functional capacity, education, and skill level determining whether or not Plaintiff was disabled upon turning 45." *Goundie*, No. 7:03-CV-0176-R, slip op. at [3].

reassessment of the plaintiff's RFC and found that he was not disabled because he could perform other work existing in significant numbers in the national economy. The plaintiff returned to this court, presenting the sole argument that the ALJ had violated the law of the case by reassessing the plaintiff's RFC on remand. Adopting Judge Kaplan's findings and recommendation, Judge Buchmeyer concluded that "[b]y remanding [the] case to the Commissioner 'to further address the applicability of the Medical-Vocational Guidelines to Plaintiff's [RFC], education, and skill level,' the district court implicitly adopted the [first] ALJ's findings with respect to the first four steps of the sequential evaluation analysis." *Id.* at [8]. He reasoned that "[a]ny other holding would be inconsistent with the rationale of the law of the case doctrine and the mandate rule —— 'to prevent the continued litigation of settled issues and [ ] to assure compliance by inferior courts with the decisions of superior courts.'" *Id.* (brackets in original; citing authorities).

The court respectfully disagrees with *Goundie* to the extent it holds that a remand order issued in response to an agreed or unopposed motion, and without any consideration of the merits of the Commissioner's decision, constitutes an "implicit adoption" of any ALJ findings not specified in the remand order. *See Kennedy*, 273 F.3d at 1299 (holding that "law of the case principles apply only to decisions on the actual merits," and decisions made on some

other basis ordinarily are not given law-of-the-case effect); *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F.Supp.2d 601, 609 (E.D. Tex. 2005) (adopting magistrate judge report and recommendation) (holding that court did not adopt first ALJ's RFC finding where it ordered remand "only at the Commissioner's request," "before the court acted on the merits of any administrative finding"); *Muse v. Sullivan*, 925 F.2d 785, 787, 790 (5th Cir. 1991) (per curiam) (holding that where court granted Commissioner's unopposed motion to remand, Commissioner was not bound by previous ALJ's finding that claimant could only perform light work).[6] Although the merits of a matter need not be explicitly decided by the district court to become the law of the case, to be decided by necessary implication, the merits must at least have been *considered* by the court. *Compare In re England*, 153 F.3d 232, 235 (5th Cir. 1998) (holding that court made no implicit determination as to a certain issue where there was no indication that it had even considered the issue, having simply approved an unopposed transfer of property upon the trustee's urging) *and Platoro Ltd. v. Unidentified Remains of a Vessel*, 695 F.2d 893, 898 n.4 (5th Cir. 1983) (declining to apply law of the case where issue was not contested before court on

---

[6]Brown attempts to distinguish *Wiltz* and *Muse* by arguing that they both involve sentence-six, not sentence-four, remands. As the court has explained above, however, this distinction is irrelevant to the apposite question, which is whether the court decided certain issues so as to establish the law of the case. Regarding this question, *Wiltz* and *Muse* are directly on point.

appeal) *with In re Felt*, 255 F.3d 220, 225-26 (5th Cir. 2001)
(holding that law of the case applied to certain issues not
explicitly addressed by appellate court where those issues were
fully briefed and considered by the court).

*Goundie* appears to assume that because the district court
remanded the case to the Commissioner to further address a step
five inquiry, the court must have considered (and adopted) the
ALJ's findings with respect to the first four steps of the
sequential analysis.   But a district court, unlike an ALJ
conducting *de novo* proceedings, is not required to consider the
steps of the sequential analysis in order.  *See Carey v. Apfel*, 230
F.3d 131, 135 (5th Cir. 2000) ("The court does not . . . try the
issues de novo[.]" (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th
Cir. 1999)).   Instead, the court addresses the plaintiff's grounds
for relief.   And in doing so, it may make narrow rulings regarding
subsequent steps in the sequential analysis without considering
administrative determinations made at earlier steps.[7]  *See Hollins*,
49 Fed. Appx. at 535 (holding that district court merely assumed

---

[7]For this reason, the court also respectfully disagrees with
*Taylor v. Barnhart*, No. 3:00-CV-2816-M, slip op. at [8] (N.D. Tex.
May 9) (Kaplan, J.), *recommendation adopted*, (N.D. Tex. June 12,
2002) (Lynn, J.) (order), cited by *Goundie*, which reasons that
because ALJs conducting *de novo* proceedings are required to
consider the steps of the sequential analysis in order, the
district court, in remanding the case for reconsideration of the
last three steps of the sequential analysis at the Commissioner's
request, must have implicitly affirmed the ALJ's findings at steps
one and two.

the merit of ALJ's determination regarding certain issues for purpose of evaluating claimant's claims regarding two narrow errors committed by ALJ). Moreover, because the district court in *Goundie* remanded "by agreement of the parties," and since its remand order simply repeats the language of the Commissioner's unopposed motion,[8] there is no indication that the court even considered (let alone adopted) the ALJ's findings regarding steps one through four of the sequential analysis. Consequently, those issues did not become the law of the case by necessary implication.[9]

To the extent *Goundie* stands for a more narrow proposition, limited to its facts, the court finds *Goundie*'s reasoning inapplicable here. It is consistent with the rationale of the law-of-the-case doctrine to hold that Judge Boyle did not implicitly

---

[8]*Compare Goundie*, No. 7:03-CV-0176-R, slip op. at [3] ("[T]he Commissioner filed a motion to remand 'in order to further address the applicability of the Medical-Vocational Guidelines to Plaintiff's residual functional capacity, education, and skill level determining whether or not Plaintiff was disabled upon turning 45.'") *with id.* at [6] ("The order remanding this case . . . provides . . . [on remand] the Commissioner will further address the applicability of the Medical-Vocational Guidelines to Plaintiff's residual functional capacity, education, and skill level, in determining whether or not Plaintiff was disabled upon turning 45.").

[9]*Goundie* also cites *Leslie v. Barnhart*, 304 F.Supp.2d 623, 630-31 (M.D. Pa. 2003), for the proposition that the law-of-the-case doctrine precluded the ALJ from redetermining whether the plaintiff had the RFC to perform past work where the case was remanded to consider reports and findings of a treating physician. In *Leslie*, however, the court made its decision based on the "important concept of finality," without any meaningful discussion of the law-of-the-case doctrine. *Id.*

sustain any of Judge Senander's findings.  This is because those issues were not "settled" by the "decisions of [a] superior court[ ]."  Judge Boyle remanded the case before considering the merits of any of Judge Senander's findings——indeed, even before briefing was completed[10]——and she remanded the case only at the unopposed request of the Commissioner.  This evident lack of any consideration of the merits[11] precludes the possibility that she implicitly determined the issues of the severity of Brown's mental impairment and her physical RFC.  *See Wiltz*, 412 F.Supp.2d at 609. And it distinguishes this case from those in which implicit decisions were made.  *See In re Felt*, 255 F.3d at 225-26 (holding

---

[10]Brown filed a brief in support of her motion for summary judgment, but the Commissioner moved to remand before filing a cross-motion.

[11]Brown contends that the order in which decisions are made in the sequential evaluation process indicates that Judge Boyle considered earlier steps not specified in the remand order.  In other words, she maintains that because the agreed order directed the ALJ to address specific issues at steps four and five, Judge Boyle must have considered (and sustained) Judge Senander's determinations at step two of the severity of Brown's mental impairment and at step four of her physical RFC.  Given the circumstances of the remand order, however, the sequence in which decisions are made in the five-step sequential process cannot overcome the evidence that Judge Boyle simply did not consider the merits in any respect.  Moreover, a court's holding on a later step in the sequential analysis does not necessarily indicate adoption of determinations made at an earlier step.  *See Hollins*, 49 Fed. Appx. at 535 (holding law-of-the-case doctrine inapplicable where district court made no final decision on the merits regarding claimant's physical impairments and RFC but merely assumed the merit of the ALJ's determination regarding those issues for the purpose of evaluating the claimant's claims regarding two narrow errors that the ALJ allegedly committed).

that district court's findings on certain issues were implicitly affirmed by appellate court where those issues were fully briefed to appellate court and were necessary prerequisites to the relevance of considering an issue explicitly discussed by appellate court); *Knotts v. United States*, 893 F.2d 758, 761 (5th Cir. 1990) (holding that question was implicitly decided by appellate court where it was briefed, appellate court was obligated to and did in fact consider it, and court's decision on the question was evident from its rejection of the appeal); *Waterfowl LLC v. United States*, 293 Fed. Appx. 345, 350 (5th Cir. 2008) (per curiam) (holding that issue was tacitly or implicitly decided where it was "fully briefed to the appellate court" and was a "necessary predicate[ ] to the [court's] ability to address the issue or issues specifically discussed") (second brackets in original; internal quotation marks omitted) (quoting *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001)).

Furthermore, although *Goundie* is written in terms of the law-of-the-case-doctrine,[12] it is more defensible as a mandate-rule-based decision. In *Goundie* the court examined the language of the remand order, which stated:

> [T]his case [is] remanded to the Commissioner for further administrative proceedings pursuant to the fourth sentence of the Social Security Act, 42 U.S.C. § 405(g).

---

[12]*Goundie* mentions the mandate rule, but its analysis makes clear that it relies on the law-of-the-case doctrine.

> *Specifically, the Commissioner will further*
> *address the applicability of the Medical*
> *Vocational Guidelines to Plaintiff's residual*
> *functional capacity, education, and skill*
> *level, in determining whether or not Plaintiff*
> *was disabled upon turning 45.*

*Goundie*, No. 7:03-CV-0176-R, slip op. at [6] (brackets and emphasis

in original). *Goundie* construed this language to "permit[ ] the

ALJ to consider *only* whether plaintiff was disabled by applying the

Medical-Vocational Guidelines to his residual functional capacity,

education, and skill level" (a step five analysis). *Id.* (emphasis

added). The court cited, *inter alia*, the rationale of the mandate

rule as necessary "to prevent the continued litigation of settled

issues and [ ] to assure compliance by inferior courts with the

decisions of superior courts." *Id.* at [8]. The court concluded

that the ALJ's reexamination of the RFC (a step four determination)

on remand "exceeded the scope of the remand order." *Id.* at [6].

But even when *Goundie* is understood as a mandate rule

decision, it is distinguishable from the present case. The

directive contained in the agreed remand order in *Goundie* is far

more restrictive in limning the scope of the proceedings before the

Commissioner. It is unlike the order that Judge Boyle signed,

which, as the court explains below, merely sets out what the

"proceedings on remand *will include*," R. 478 (emphasis added), and

is therefore non-exhaustive and leaves room for other, unspecified

proceedings.

The Commissioner's decision did not violate the law of the

case.

V

The court next addresses whether the Commissioner's decision is reversible as violating the mandate rule.

A

Although Brown adverts to the mandate rule as an aside to her main argument regarding the law-of-the-case doctrine, *see supra* note 2, the mandate rule actually affords her a better (albeit unsuccessful) argument. Brown seems to conceive of the mandate rule and the law-of-the-case doctrine as perfectly overlapping concepts, such that the scope of one extends almost coterminously with the reach of the other. This misunderstanding, which may explain Brown's failure to flesh out the comparatively stronger mandate-rule argument, is not surprising considering that courts often speak of the mandate rule and the law-of-the-case doctrine interchangeably, and in many cases the rule and the doctrine overlap substantially, if not precisely. Nevertheless, "[t]he rule of mandate is . . . broader than[ ] the law of the case doctrine." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). And agreed remand orders, in particular, highlight this distinction. Regardless of whether an issue was decided by a court, the Commissioner is obligated under the mandate rule to implement on remand both the letter and the spirit of the court's order, and he is powerless to disregard the court's explicit directives. *See*

*Becerra*, 155 F.3d at 753.

B

As noted above, Judge Boyle's order remanding the case to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) provided, in relevant part:

> Before the Court is defendant's motion for remand; and it appearing that said motion is unopposed, it is granted. Accordingly, it is ORDERED that the above numbered and entitled cause be, and the same is hereby remanded to said Commissioner for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). Upon the receipt of the remand order the Appeals Council will assign to Administrative Law Judge (ALJ) to evaluate the mental residual functional capacity of the claimant. The proceedings on remand will include a supplemental administrative hearing before an ALJ. A vocational expert will be present at the hearing and the ALJ will pose a hypothetical question to the vocational expert that will include any non-exertional (mental) limitations as articulated in the ALJ's assessment of claimant's mental residual functional capacity.

R. 478.[13]

Brown argues that because Judge Williams reassessed Brown's physical RFC and the severity of Brown's mental impairment, he exceeded the scope of the remand order, which only directed the ALJ to evaluate Brown's *mental* RFC and to perform a step five analysis. In other words, Brown does not contend that Judge Williams failed

---

[13]The issues specified in the remand order repeat the issues specified by the Commissioner in his unopposed motion to reverse and remand.

to implement the *letter* of the remand order by disregarding its explicit directives; rather, she maintains that Judge Williams failed to implement the *spirit* of the mandate. To support this argument, she cites three decisions: *Goundie*, *Berry v. Astrue*, 2008 WL 927546 (S.D. W. Va. Apr. 4, 2008), and *Ozbun v. Callahan*, 968 F. Supp. 478 (S.D. Iowa 1997).

The court concludes that each case is distinguishable. In both *Berry* and *Goundie* it was determined that the law of the case applied to certain issues reexamined by the ALJ on remand. *See Berry*, 2008 WL 927546, at *2 ("In discussing the evidence and the [ALJ's] findings relative to claimant's physical impairments, the Court . . . concluded that the finding of ability to perform a limited range of sedentary level work was . . . '[c]learly . . . supported by the substantial evidence in the record.' There was no indication or suggestion that further action needed to be taken on this issue."); *Goundie*, No. 7:03-CV-0176-R, slip op. at [8] ("[T]he district court implicitly adopted the ALJ's findings with respect to the first four steps of the sequential evaluation analysis.").[14] Consequently, assuming that the district court decided the matters at issue, the ALJ was bound by the district court's decision, *see Becerra*, 155 F.3d at 752, and any reexamination of the matters on

_____

[14]Although the court does not necessarily agree with the determination in *Goundie* that the district court implicitly adopted the ALJ's findings, assuming *arguendo* that it did, the mandate rule would prevent the ALJ from reconsidering those findings.

remand——although perhaps not a violation of the letter of the
order——would violate the spirit of the district court's remand
order. *See id.* at 753; 18B Wright, et al., *supra*, § 4478.3, at 759
("[A]n issue . . . decided on appeal . . . become[s] part of the
mandate binding on remand"). Because this reasoning is
inapplicable to the present case, where no law of the case was
established, neither *Berry* nor *Goundie* supports Brown's contention
that Judge Williams violated the court's mandate.

In *Ozbun* the district court remanded to the Commissioner so
that a VE could opine on whether the plaintiff's amputation created
vocational limitations that were compatible with unskilled
sedentary work. *Ozbun*, 968 F. Supp. at 479. On remand, however,
the ALJ did not obtain the VE's opinion. Instead, after
determining that the plaintiff did not have a severe impairment, he
stopped the sequential evaluation at the second step. *Id.* at 480.
The ALJ therefore clearly violated the court's order by failing to
conduct the very inquiry that the court specified in the remand
order. *See* 18B Wright, et al., *supra*, § 4478.3, at 754 ("It does
violate the mandate . . . to fail to decide questions that the
court of appeals has directed the lower court to decide."). Here,
by contrast, it is undisputed that Judge Williams in fact conducted
on remand the inquiries specified in Judge Boyle's remand order.

C

Brown contends that Judge Williams violated the order by

- 25 -

conducting inquiries that extended beyond those specified in the
order.  This argument presents the question whether the spirit of
a court order is violated where no law of the case has been
established by the district court and the ALJ conducts inquiries
beyond those specified in the remand order.  On this question,
*Ozbun*, *Berry*, and *Goundie* (understood as a law-of-the-case-doctrine
case) provide no guidance.

Under general mandate principles, Judge Williams did not
violate the court's mandate by reconsidering Brown's physical RFC
and the severity of her adjustment disorder.  "When further trial-
court proceedings are appropriate after remand, the appellate
mandate commonly leaves the trial court free to decide matters that
were not resolved on appeal."  18B Wright, et al., *supra*, § 4478.3,
at 750.  And "[i]f a matter is . . . left open, the lower court is
free to reconsider its own earlier determination."  *Id.* at 754;
*Barrett v. Thomas*, 809 F.2d 1151, 1157 (5th Cir. 1987) (holding
that appellate court mandate did not preclude district court from
altering determinations made in its original judgment on issues not
determined on appeal).

Moreover, while it is possible that a remand order could be
written in such a way as to preclude implicitly the consideration
of inquiries not specified in the order, *see, e.g., Goundie*, No.
7:03-CV-0176-R, slip op. at [6] (understood as a mandate-rule case)
(construing remand order that stated that, on remand,

"[s]pecifically, the Commissioner will . . . address [X issue]" as precluding consideration of non-X issues), this is not the case here. Judge Boyle's remand order uses the phrase "will include" when discussing the proceedings on remand. R. 478 ("proceedings on remand *will include* a supplemental administrative hearing before an ALJ . . . and the ALJ will pose a hypothetical question to the [VE] that *will include* any non-exertional (mental) limitations") (emphasis added)). This court is the tribunal best able to construe its own order. *See Brachtel*, 132 F.3d at 420 ("The District Court knew its original intent in remanding the case, and we will defer to the District Court's construction of its own order."). The court therefore holds that the order's use of the term "include" indicates that the remand proceedings were not limited to the issues specified in the order. *See* American Heritage Dictionary at 651 (2d. College ed. 1991) ("Usage: *Include* is used most appropriately before an incomplete list of components: *The ingredients of the cake include butter and egg yolk*. If all the components were named, it is generally clearer to write: *The ingredients are*. . . .") (emphasis in original); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* at 431-32 (2d ed. 1995) ("[Including] should not be used to introduce an exhaustive list, for it implies that the list is only partial.") (citing *P.R. Mar. Shipping Auth. v. I.C.C.*, 645 F.2d 1102, 1112 n.26 (D.C. Cir. 1981) ("It is hornbook law that the use of the word *including* indicates

that the specified list . . . is illustrative, not exclusive."
(emphasis and ellipsis in original))).  Consequently, Judge
Williams did not violate the spirit of Judge Boyle's order by
conducting inquiries beyond those specified in the remand order.

The Commissioner's decision on remand is not reversible as
violating the mandate rule.

VI

In the conclusion of her reply brief, Brown argues that policy
considerations precluded Judge Williams from reconsidering on
remand Brown's physical RFC and the severity of her adjustment
disorder.  She contends that if this court holds that agreed orders
like the one here do not establish any law of the case, plaintiffs
will have no incentive to join agreed orders and will be forced to
proceed with litigation in every civil action.

Before addressing Brown's argument, it is useful to take
account of the salutary aspects of remand orders like the one at
issue.  Agreed remand orders are not infrequent occurrences, and
they benefit both the court and the parties.  Under this procedure,
the parties agree that there is some defect in the administrative
proceedings that is best resolved by remanding the matter.  An
agreed remand relieves the Commissioner and his counsel (typically
the United States Attorney) from the burdens involved in defending
a decision that is recognized to be defective in some respect.  It
provides the plaintiff another opportunity to prove that she is

disabled, without incurring additional costs and delay in the district court and, as is often the case, while contemporaneously recovering the attorney's fees that she has incurred litigating in the district court.[15]  And it relieves the court of the burden of expending resources on a matter that the parties agree is unworthy of this expenditure.

Turning to Brown's policy argument, the court notes that a plaintiff in Brown's position has at least two choices, each of which has its own incentives: she can agree to a broad remand order like the one in this case, or she can negotiate a more specific, limited order.  If a plaintiff decides to agree to a broad remand order, she must be prepared for the possibility of litigating anew issues that were addressed in the administrative proceeding, before judicial review was sought, but that were not resolved explicitly or by necessary implication and so never became the law of the case.  But this possibility is not necessarily undesirable.  After all, a plaintiff seeks judicial review because the Commissioner ruled against her.  And although there is the risk on remand that the Commissioner will again find that she is not disabled, it is

---

[15]It is safe to say that plaintiffs' attorneys virtually always seek attorney's fees in connection with agreed, fourth-sentence remand orders, and that the inclusion of the reference to the "fourth sentence" of 42 U.S.C. § 405(g) is considered critical to their right to recover such fees.  This means that attorneys receive at least some payment for their services *before* their clients are determined to be disabled, and perhaps substantially in advance of when they would otherwise be compensated.

also possible that the Commissioner will determine that she *is* disabled. A plaintiff therefore has an incentive to agree to a remand that will afford her another opportunity to establish that she is disabled.

And if a plaintiff prefers not to litigate issues anew on remand, she can choose to negotiate with the Commissioner for an agreed order that specifically limits the scope of what is to be adjudicated and what proceedings are to be conducted. When this type of remand order is entered, the mandate rule will preclude the Commissioner (and, in turn, the ALJ) on remand from relitigating any issue or undertaking any proceeding that exceeds the letter or spirit of the court's remand order. The Commissioner usually should have no disincentive to enter into such agreed orders. Like broad remand orders, these agreed remands relieve the Commissioner (and the United States Attorney) of the burdens of defending a decision that is recognized to be defective in some respect. They may also constrain the plaintiff from seeking to relitigate issues that have already been resolved. And these orders can be written so that they provide a clear and specific road map for completing focused proceedings before busy ALJs. In sum, there are significant incentives for plaintiffs to agree to specific remand orders that take full advantage of the coercive force of the mandate rule. Today's decision strengthens this option.

In this case, Brown entered into a broad agreed remand.

Although it is possible that she originally intended the remand order to be more limiting in its scope and effect, it is notable that when Judge Williams heard evidence on the severity of her mental impairment and physical RFC, Brown relitigated the issues and, as far as the court can tell, did not protest that they exceeded the scope of the remand order. *Cf. Ozbun*, 968 F. Supp. at 480 ("At the hearing, Plaintiff's attorney stated: '. . . it was my understanding that this (hearing) was going to be limited to the issue raised on the remand.'"); *Moreira v. Comm'r of Soc. Sec.*, 2007 WL 4410043, at *1 (E.D.N.Y. Dec. 14, 2007) ("[Plaintiff] filed a letter motion advising the Court that the ALJ assigned to the case on remand had informed her that he would 'be considering *all* issues in the case . . . . In her letter, [plaintiff] asked the Court to 'reiterate its direction that the case is remanded solely to establish an onset date of disability . . . .'"). In relitigating her case anew, Brown gained a second opportunity to obtain favorable rulings on all issues, including her physical RFC and the severity of her mental impairment. It is not unjust under these circumstances to hold her to the consequences of her choice.

*    *    *

Accordingly, the Commissioner's decision is

AFFIRMED.

February 11, 2009.

                              _____
                              SIDNEY A. FITZWATER
                              CHIEF JUDGE